UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREGORY TUCKER,

     Plaintiff,

v.                                                    Case No. 8:21-cv-1251-KKM-CPT

FLORIDA DEPARTMENT OF REVENUE,
PENNSYLVANIA CHILD SUPPORT, and
STATE OF NEW YORK CHILD SUPPORT,
Bronx Division,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Before me on referral is Plaintiff Gregory Tucker's *Application to Proceed in District Court without Prepaying Fees or Costs*, which I construe as a motion to proceed *in forma pauperis* (IFP Motion). (Doc. 2). Also before me is Tucker's complaint. (Doc. 1). For the reasons discussed below, I respectfully recommend that Tucker's IFP Motion be denied without prejudice and that his complaint be dismissed with leave to amend.

I.

This action appears to stem from a quarrel over child support payments involving Tucker and Defendants Florida Department of Revenue, Pennsylvania

Child Support, and State of New York Child Support, Bronx Division (New York Child Support). (Doc. 1 at 2). In short, Tucker seems to allege that for the last twenty years, the Florida Department of Revenue has required him to remit twice the amount of child support he is legally obligated to pay. *Id.* at 4. Tucker asserts that he has raised the matter with the Florida Department of Revenue and—for reasons unknown—Pennsylvania Child Support as well, but that the former state agency has "never let[ ] him provide evidence," while the latter—again for reasons unknown— "say[s] [he] cannot have a hearing of any kind." *Id.* Tucker makes similar allegations with respect to New York Child Support, contending that it has garnished double the child support payments to which it is entitled pursuant to an "illegal . . . . emergency court order on [a] [thirty-five-]year[-]old child." *Id.* Oddly, however, Tucker does not request any specific relief in his complaint, nor does he identify a monetary sum he seeks to recover in this matter.

As for Tucker's IFP Motion, it contains a number of conflicting representations about his income and expenses. (Doc. 2). Construing that submission liberally, it appears that Tucker earns between $140 and $1,100 per month, spends between $650 and $1,325 per month, and possesses $600 in total assets. *Id.*

## II.

Under 28 U.S.C. § 1915, a district court "may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor" upon a showing of indigency by affidavit. 28 U.S.C. § 1915(a)(1). The court has "wide discretion" to grant or deny

an application to proceed *in forma pauperis*, and, in civil cases for damages, the privilege should be granted "sparingly." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 (11th Cir. 2004) (citation omitted). While such an application "need not show that the litigant is absolutely destitute," it must indicate "that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Id.* at 1307 (quoting *Adkins v. E.I. Dupont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948)) (internal quotation marks omitted). In determining a litigant's *in forma pauperis* eligibility, "courts will generally look to whether the [litigant] is employed, [his] annual salary, and any other property or assets [he] may possess." *Lesure v. Saul*, 2021 WL 2003458, at *1 (M.D. Fla. Mar. 31, 2021) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2021 WL 2003073 (M.D. Fla. May 19, 2021).

When an application to proceed *in forma pauperis* is filed, the district court must also review the case and dismiss the complaint *sua sponte* if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Dismissal for failure to state a claim in this context is governed by the same standard as dismissal under Federal Rule of Civil Procedure 12(b)(6). *Bravo v. Loor-Tuarez*, 727 F. App'x 572, 575 (11th Cir. 2018) (per curiam) (citing *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997)).[1] As such, "[t]o avoid dismissal, the

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

'complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A complaint crosses this threshold when it contains enough facts to support a reasonable inference that the defendant engaged in the alleged misconduct.  *Id.*

In evaluating a complaint under this standard, the court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff.  *Jara v. Nunez*, 878 F.3d 1268, 1271–72 (11th Cir. 2018) (citation omitted).  The court, however, "afford[s] no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action."  *Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013) (citations omitted).

In addition, the Federal Rules of Civil Procedure provide that a court must dismiss an action "[i]f the court determines *at any time* that it lacks subject-matter jurisdiction."  Fed. R. Civ. P. 12(h)(3) (emphasis added).  Indeed, federal courts are "obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking."  *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004) (internal quotation marks and citation omitted); *see also Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[A] court should inquire into whether it has subject[-]matter jurisdiction at the earliest possible stage in the proceedings.").

Finally, while *pro se* pleadings are to be construed liberally, the courts are not to "act as *de facto* counsel" for *pro se* litigants, nor are they to "rewrite an otherwise

deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (citing *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

### III.

Although Tucker seems to qualify as indigent for purposes of section 1915, his complaint is subject to dismissal because it does not satisfy the pleading requirements of Federal Rules of Civil Procedure 8 and 10, fails to articulate a basis for the Court's subject-matter jurisdiction, appears barred under the domestic-relations exception, and seemingly seeks relief from Defendants who are immune from suit.  Each of these issues will be addressed in turn.

### A.

Rule 8 requires, in relevant part, that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 10 relatedly mandates that the complaint "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count."  Fed. R. Civ. P. 10(b).  Taken in combination, Rules 8 and 10 "work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, [and so that] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted."  *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation omitted).

Contrary to these pleading standards, Tucker does not state his claim(s) "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  Nor does he set forth in separate counts each claim "founded on a separate transaction or occurrence." *Id.*; *see also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (finding complaints to be improper where they fail to "separat[e] into a different count each cause of action or claim for relief").  In fact, Tucker does not denominate any counts in his complaint or aver any causes of action.

In addition to these deficiencies, Tucker does not meaningfully "specify[ ] which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323 (citations omitted); *see also Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015) (per curiam) ("If the complaint indiscriminately groups the defendants together, it fails to comply with the minimum standard of Rule 8.").  Tucker does not assert, for example, the particulars as to how each Defendant was involved in the challenged child-support orders or collection activities, or what each Defendant did (or did not do) individually that breached its respective and purported legal duties to him.  *See Hatcher v. Ala. Dep't of Hum. Serv.*, 2018 WL 326413, at *2 (N.D. Ga. Jan. 5, 2018) (dismissing the plaintiff's generic claim that his employer should not have followed an allegedly unconstitutional child support order where the plaintiff identified no law or legal duty implicated by the defendant's conduct), *aff'd* 747 F. App'x 778 (11th Cir. 2018) (per curiam).  Instead, he makes only the generalized assertion that the Defendants have facilitated the

collection of excess child support payments from him without providing sufficient factual information for the Defendants and the Court to assess the merits of his allegations. *See Iqbal*, 556 U.S. at 677–78 (stating that Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996) (recognizing that a hallmark of an insufficient pleading is when "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief").

Viewed singularly or in the collective, these pleading infirmities deprive the Defendants—and the Court—of "fair notice" about the nature of the claim (or claims) brought against the Defendants and the "grounds" upon which it is predicated. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007); *see also Weiland*, 792 F.3d at 1323 (noting that the "[t]he unifying characteristic" of complaints that do not adhere to the requirements of Rules 8 and 10 "is that they fail to one degree or another, and in one way or another, to give [a] defendant[ ] adequate notice of the claims against [her] and the grounds upon which each claim rests"). That Tucker is proceeding *pro se* does not excuse his failure to comply with the basic pleading standards imposed under the Federal Rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) ("A *pro se* pleading is held to a less stringent standard

than a pleading drafted by an attorney . . . . [but it] must still suggest that there is at least some factual support for a claim.") (citation omitted).[2]

## B.

More concerning than the above pleading defects is the fact that Tucker's complaint does not establish that the Court has subject-matter jurisdiction over his lawsuit.  As a general matter, federal subject-matter jurisdiction is most often found "arising under" the laws of the United States pursuant to 28 U.S.C. § 1331 (i.e., federal question jurisdiction) or based upon the "diversity" of the parties under 28 U.S.C. § 1332 (i.e., diversity jurisdiction).  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *Walker v. Sun Trust Bank of Thomasville, Ga.*, 363 F. App'x 11, 15 (11th Cir. 2010) (per curiam) (citing 28 U.S.C. §§ 1331, 1332).  Regardless of whether a plaintiff is relying on federal question or diversity jurisdiction, he must include in his complaint a short and plain statement setting forth facts that, if true, demonstrate that the Court has subject-matter jurisdiction to entertain his case.  Fed. R. Civ. P. 8(a)(1); *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268–69 (11th Cir. 2013) (citation omitted).

---

[2] One other omission in Tucker's complaint is worth mentioning.  Under Federal Rule of Civil Procedure 11, every pleading submitted by an unrepresented party must be signed by that party personally. Fed. R. Civ. P. 11(a).  When a party's pleading lacks the requisite signature, Rule 11 obligates the court to strike the pleading "unless the omission is promptly corrected after being called to the . . . party's attention." *Id.*  The central purpose of Rule 11's signature requirement is "to deter baseless filings in district court and . . . [to] streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (citation omitted).  Consistent with Rule 11's goal, the form that Tucker used for his complaint includes a signature block for plaintiffs like Tucker to certify compliance with Rule 11's directives. *See* (Doc. 1 at 5).  Tucker, however, did not sign his complaint.

8

To establish diversity jurisdiction, a plaintiff must show that there is complete diversity of citizenship among the parties (i.e., that no plaintiff is a citizen of the same state as any defendant), and that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332; *Legg v. Wyeth,* 428 F.3d 1317, 1320 n.2 (11th Cir. 2005).  In this context, the citizenship of an individual is determined by his "domicile," which requires a showing of "both residence in a state and 'an intention to remain there indefinitely.'"  *Travaglio*, 735 F.3d at 1269 (citation omitted); *see also Smith ex rel. Cox v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021) ("Residency is necessary, but insufficient, to establish citizenship in a state.") (citation omitted).  By contrast, a state or a public entity considered to be "an arm or alter ego" of a state has no "citizenship" because "a state is not a citizen of a state."  *Univ. of S. Fla. Bd. of Trs. v. CoMentis, Inc.*, 861 F.3d 1234, 1235 (11th Cir. 2017) (citing *Am. Tobacco Co.*, 168 F.3d at 412) (internal quotation marks omitted).

Here, Tucker avers in his complaint that he is a citizen of Florida but does not address the citizenship of any of the Defendants.  (Doc. 1 at 2).  The absence of such an averment alone renders Tucker's complaint jurisdictionally infirm, insofar as diversity jurisdiction is concerned.  *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007) ("The burden to show the jurisdictional fact of diversity of citizenship [is] on . . . [the] plaintiff.") (quoting *Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F.2d 954, 956 (5th Cir. 1966)).

Even putting aside this oversight, it appears by their titles that the Defendants are either "arm[s] or alter ego[s]" of the States of Florida, Pennsylvania, or New York.

*CoMentis*, 861 F.3d at 1235.  Assuming this is so, none of the Defendants have a place of "citizenship" for purposes of the Court's diversity jurisdiction.  *Id*. (noting that Congress's authorization of diversity jurisdiction over suits between "citizens of different States" under section 1332 "does not extend to suits between a state and a citizen of another state because 'a state is not a citizen of a state for the purpose of diversity jurisdiction'") (quoting *Am. Tobacco Co.*, 168 F.3d at 412).

Moreover, even if each of the Defendants were deemed to be a "citizen" of its respective state, Tucker's complaint would still appear inadequate to invoke the Court's diversity jurisdiction due to a lack of complete diversity.  This is because, under such a scenario, Tucker is a resident of Florida and, by all appearances, a citizen of that state for diversity purposes, and one of the defendants—namely, the Florida Department of Revenue—would also be a citizen of Florida.  *Legg,* 428 F.3d at 1320–21 n.2 ("Federal diversity jurisdiction under 28 U.S.C. § 1332 requires 'complete diversity'—the citizenship of every plaintiff must be diverse from the citizenship of every defendant.") (citation omitted); *Moussignac v. Ga. Dep't of Human Res.*, 139 F. App'x 161, 162 (11th Cir. 2005) (per curiam) (finding no diversity jurisdiction in a child support dispute where the parties were "residents" of the same state).

Further undermining the Court's diversity jurisdiction is the fact that Tucker does not identify an amount-in-controversy that exceeds the $75,000 threshold.  *See Giovanno v. Fabec*, 804 F.3d 1361, 1365 (11th Cir. 2015) ("A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith.") (quoting *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir.

2003)).  Indeed, Tucker does not allege facts in his complaint that establish any specific monetary sum at all.  *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (holding that the district court rightly dismissed *pro se* plaintiff's claim for failure to establish an element of subject-matter jurisdiction under section 1332).

Nor does the Court have federal question jurisdiction over Tucker's claims. Federal question jurisdiction exists "where a case presents a federal question on the face of the plaintiff's well-pleaded complaint."  *Sims v. UNATION, LLC*, 292 F. Supp. 3d 1286, 1299 (M.D. Fla. 2018) (citing *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1251 (11th Cir. 2011)).  In this case, however, Tucker neither states in his complaint that he is seeking to invoke the Court's federal question jurisdiction nor cites any federal law upon which his claim (or claims) against the Defendants is predicated.  *Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Constr. Co.*, 607 F.3d 1268, 1276 (11th Cir. 2010) (concluding that federal question jurisdiction was lacking where the complaint was "devoid of a single citation to a Constitutional provision, a federal statute, or a recognized theory of common law as the basis for the allegation that the [plaintiff's claim] arises under federal law").

## C.

Tucker's complaint also appears to be subject to dismissal under the "domestic relations exception."  This long-standing exception instructs federal courts to abstain from exercising jurisdiction over cases that require a determination on issues of child custody, child support, paternity, divorce, or alimony.  *Moussignac*, 139 F. App'x at 162 ("'[F]ederal courts generally dismiss cases involving divorce and alimony, child

11

custody, visitation rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification.'") (quoting *Ingram v. Hayes*, 866 F.2d 368, 369 (11th Cir. 1988) (per curiam)).  This exception carries greater weight where exercising jurisdiction over a case would "mandate inquiry into the marital or parent-child relationship."  *Ingram*, 866 F.2d at 370 (citing *Jagiella v. Jagiella*, 647 F.2d 561, 565 (5th Cir. 1981)).

Here, Tucker's allegations center on the Defendants' purported conduct with respect to his court-ordered child support, a matter which would seem to fall within the scope of the domestic relations exception.  *Moussignac*, 179 F. App'x at 162.  And considering some of the accusations that Tucker makes in his complaint—for example, that New York is operating under an "illegal" child support order covering a thirty-five-year-old person, and that Florida has been collecting excessive child support from Tucker for twenty years—it would appear that the Court's resolution of such averments would require it to delve into the nature of Tucker's "marital or parent-child relationships."  *Ingram*, 866 F.2d at 370.  As such, this action is seemingly barred by the domestic relations exception.[3]

---

[3] Because Tucker provides almost no detail about the court orders he references in his complaint—such as when they were issued or whether they remain subject to modification by an appropriate state court—I do not address whether the doctrines articulated in *Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923), *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Younger v. Harris*, 401 U.S. 37 (1971) apply in this case.

D.

Tucker's claim(s) against the Defendants likewise appear to be barred under the Eleventh Amendment.[4]  Courts have long construed the Eleventh Amendment to "immunize[ ] an unconsenting state from suits brought in federal court" by private citizens. *Zatler v. Wainwright,* 802 F.2d 397, 400 (11th Cir. 1986) (citing *Edelman v. Jordan*, 415 U.S. 651, 678 (1974)); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996) (recognizing that the "Eleventh Amendment restricts the [federal] judicial power under Article III").  Eleventh Amendment immunity extends not only to actions in which the state itself is named as a defendant but also to matters in which "arms of the state" are sued.  *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) (noting that it is "well-settled that Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued") (citation omitted); *Nicholl v. Bd. of Regents*, 706 F. App'x 493, 495 (11th Cir. 2017) (per curiam) (same) (citation omitted).

Exceptions to the doctrine of Eleventh Amendment immunity arise when: (1) a state has consented to be sued or waived its immunity, *Nicholl*, 706 F. App'x at 495 (citing *Cross v. Alabama*, 49 F.3d 1490, 1502 (11th Cir. 1995)); (2) Congress has abrogated a state's immunity, *United States v. Georgia*, 546 U.S. 151, 158–59 (2006); or (3) a plaintiff seeks prospective injunctive relief against a state official to end

---

[4] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

continuing violations of federal law, *Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

None of these exceptions apply to Tucker's claim(s) against the Defendants, at least not as he has framed them.[5]  Tucker does not contend that any of the Defendants have waived their Eleventh Amendment immunity with respect to his child support-related claim(s), nor does the case law support such a contention.  *See, e.g.*, *Jackson v. Child Support*, 2018 WL 8754206, at *3 (M.D. Fla. Dec. 5, 2018), *report and recommendation adopted*, 2019 WL 2052324 (M.D. Fla. May 9, 2019) (discerning no Eleventh Amendment waiver in a child support-related case against the Florida Department of Revenue); *Bryant v. Cherna*, 520 F. App'x 55, 57 (3d Cir. 2013) (per curiam) (finding an exception to Eleventh Amendment immunity inapplicable to Pennsylvania and a domestic relations agency in a child support-related case); *Johnson v. New York*, 21 F. App'x 41, 43 (2d Cir. 2001) (holding that the State of New York and an agency of that state were entitled to Eleventh Amendment immunity in a child support-related action).

Similarly, Tucker does not argue that Congress has abrogated Florida, Pennsylvania, or New York's Eleventh Amendment immunity in child support collection disputes, nor does he identify any federal law that could serve as a basis for such an abrogation.  *See Cassady v. Hall*, 892 F.3d 1150, 1153 (11th Cir. 2018) (per

---

[5] As alluded to above, I assume for purposes of this report and recommendation that the Defendants are "arms" of their respective states.  *See Manders*, 338 F.3d at 1308 (identifying four factors relevant to the "arm of the state" inquiry under the Eleventh Amendment).

curiam) ("With respect to congressional abrogation, a federal statute will not be read to abrogate a state's sovereign immunity unless Congress has made its intention to do so 'unmistakably clear' in the language of the statute.") (citation omitted).  Further, Tucker has not sued a state official for prospective injunctive relief to end a continuing violation of federal law.  *See Lane*, 772 F.3d at 1351 (citing *Ex Parte Young*, 209 U.S. 123).  As a result, the Eleventh Amendment appears to serve as yet another bar to Tucker's action.

IV.

For the reasons stated above, I respectfully recommend that the Court:

1.      Deny Tucker's IFP motion (Doc. 2) without prejudice;

2.      Dismiss Tucker's complaint (Doc. 1) without prejudice;

3.      Grant Tucker permission to file, within twenty (20) days of the Court's Order: (a) an amended complaint that complies with the pleading requirements set forth in the Federal Rules of Civil Procedure and that corrects the deficiencies identified herein; and (b) a renewed motion to proceed *in forma pauperis*; and

4.      Caution Tucker that a failure to comply with these directives may result in the dismissal of his case without further notice.

If Tucker intends to file an amended complaint and to submit a renewed *in forma pauperis* motion, I encourage him to seek legal assistance and consult the resources available to *pro se* litigants in advance of doing so.  Tucker may obtain advice, for example, through the "Legal Information Program," in which the Tampa Bay Chapter of the Federal Bar Association offers unrepresented parties the chance to solicit and

15

obtain free, limited guidance from attorneys on the procedures governing federal cases.[6]

In addition, Tucker may visit the Middle District of Florida's resources for litigants without counsel,[7] which include a "Guide for Proceeding Without a Lawyer." The Court's website also includes helpful links to the Federal Rules of Civil Procedure,[8] as well as various forms for federal court litigants to use.[9]

Respectfully submitted this 3rd day of November 2021.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal

---

[6]  A brochure containing further information about the program is available at https://www.flmd.uscourts.gov/sites/flmd/files/documents/mdfl-legal-information-program-tampa.pdf.
[7] https://www.flmd.uscourts.gov/litigants-without-lawyers
[8] https://www.uscourts.gov/sites/default/files/rules-of-civil-procedure.pdf
[9] https://www.flmd.uscourts.gov/forms/all

conclusion(s) the District Judge adopts from the Report and Recommendation.  *See*

11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).


Copies to:

Honorable Kathryn K. Mizelle, United States District Judge

*Pro se* Plaintiff